```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

A3M VACUUM SERVICES, L.L.C.                    CIVIL ACTION

VERSUS                                         NO: 10-2766

HUB INTERNATIONAL MIDWEST,                     SECTION: R(2)
LIMITED

## ORDER AND REASONS

Defendant Hub International Midwest, Limited ("Hub") moves for summary judgment.[1] For the following reasons, the Court DENIES Hub's motion.

## I.  Background

This suit stems from previous state court litigation. On September 6, 2006, Lawrence and Emma Brock sued A3M Vacuum Services, L.L.C. ("A3M") for damages arising out of a car accident (the "Brock litigation").[2] A3M now sues Hub, its insurance agency, for failure timely to notify A3M's excess liability insurer of the Brock litigation.[3] A3M alleges that Hub's failure to notify the excess insurer of the Brock litigation before March 2009 resulted in the excess insurer refusing to provide coverage.[4]

---

[1] R. Doc. 49.

[2] R. Doc. 49-6 at 53.

[3] R. Doc. 1-6 at 13.

[4] *Id.* at 12.

At the time of the car accident, A3M carried both liability and excess liability insurance. Robert Zetzmann, a Hub employee, was A3M's insurance agent.[5] Clarendon American Insurance Company ("Clarendon") carried A3M's primary liability policy, with a policy limit of $1,000,000.[6] Ace Westchester Specialty Group ("Ace") carried A3M's excess liability policy.[7] A3M's excess liability policy required that A3M "see to it" that Ace receive written notice of any suit against A3M "as soon as practicable."[8] The policy states that A3M "shall [not] make or authorize an admission of liability . . . without [Ace's] written consent."[9]

The record indicates that Hub was aware of the Brock litigation as early as September 7, 2006, when it wrote to Clarendon's general agent for information regarding A3M's defense counsel.[10] On September 28, 2006, Hub was copied on a letter from Clarendon's general agent to A3M, which noted that the Brocks seek "an unspecified amount that may be in excess of your liability limits under the [Clarendon] policy" and advised A3M to "notify your [excess liability] insurer immediately of this

---

[5] R. Doc. 49-3 at 2.

[6] *Id.*

[7] *Id.*

[8] R. Doc. 49-6 at 43.

[9] *Id.* at 44.

[10] R. Doc. 49-7 at 2.

2

lawsuit."[11] The record additionally contains an October 20, 2006 letter from Scott Falgout, an A3M employee, to Zetzmann, notifying Hub of two citations against A3M.[12] In his deposition, Falgout testified that one of these citations was in the Brock litigation.[13] The case numbers and dates listed in the letter, however, do not match the case number or filing date of the Brock litigation.[14] It is undisputed that Hub did not notify Ace, the excess insurer, of the Brock litigation before March 2009.

On March 16, 2009, after trial in the Brock litigation but before the court had issued judgment, the Brocks made a settlement offer to A3M in the amount of $1,000,000.[15] They also filed a post-trial memorandum with the court requesting over $2,000,000 in damages.[16] On March 19, 2009, A3M notified Hub of these developments and asked Hub to forward the information to Ace.[17] On March 20, 2009, Hub informed Ace of the Brock

---

[11] R. Doc. 49-6 at 50.

[12] *Id.* at 51.

[13] *Id.* at 16.

[14] *Compare id.* at 51 *with id.* at 52, 53.

[15] R. Doc. 49-3 at 5.

[16] *Id.*

[17] *Id.* at 6.

litigation.[18] The same day, A3M rejected the Brocks' settlement offer.[19]

On September 4, 2009, the state court entered judgment against A3M, awarding the Brocks $1,236,419.70 in damages.[20] This left A3M liable for damages in excess of its coverage under its primary liability policy with Clarendon.[21] In January 2010, Ace notified A3M that it was refusing coverage under the excess liability policy, because "notice to [Ace] via [Hub] on March 20, 2009 was clearly not provided 'as soon as practicable' under the terms of the Policy," and because A3M stipulated to liability at trial.[22]

On April 29, 2010, A3M brought this suit against Hub. It alleges that Hub failed to notify Ace of the Brock litigation as soon as practicable.[23] It seeks damages in the amount of $236,419.70, plus interest.[24] A3M brought a separate action against Clarendon and Illinois Union Insurance Company ("Illinois

---

[18] *Id.* at 7.

[19] *Id.* at 7.

[20] *Id.* at 8.

[21] R. Doc. 1-6 at 12.

[22] R. Doc. 49-6 at 44.

[23] R. Doc. 1-6 at 13.

[24] *Id.* at 14.

Union"), a successor to Ace.[25] The Court consolidated the two cases.[26]

Hub now moves for summary judgment. It argues that A3M's claim is barred by peremption. *See* La. R.S. 9:5606.[27] A3M, Clarendon and Illinois Union each filed oppositions to Hub's motion for summary judgment.[28]

## II. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-399 (5th Cir. 2008). The Court must draw reasonable inferences in favor of the nonmoving party, but

---

[25] *A3M Vacuum Services, L.L.C. v. Westchester Specialty Insurance Services, Inc., et al.*, No. 2:13-cv-02982.

[26] R. Doc. 28.

[27] R. Doc. 49-2 at 2.

[28] R. Docs. 60, 61, 62.

"unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quotation marks removed).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quotation marks removed). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

6

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.; see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 322).

### III. Discussion

Louisiana Revised Statutes 9:5606(A) ("§ 9:5606") provides:

No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

The statute declares that these "one-year and three-year periods . . . are peremptive periods . . . [and] may not be renounced, interrupted, or suspended." La. R.S. 9:5606(D).

"Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension."

7

*Rando v. Anco Insulatins Inc.*, 16 So. 3d 1065, 1082 (La. 2009). "Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception." *Id.* "Peremptive statutes are strictly construed against peremption and in favor of the claim." *Id.* at 1083.

Hub contends that A3M's claim against it is perempted.[29] Its reasoning is as follows: A3M filed suit against Hub on April 29, 2010. The applicable peremptive period requires that A3M's claim be brought within three years of the date of the alleged act, omission or neglect. La. R.S. 9:5606(A). Thus, if A3M's cause of action arises from an alleged act, omission or neglect occurring before April 29, 2007, it is perempted. A3M's complaint points to documents dated September 7, 2006, September 28, 2006 and October 20, 2006 to show that Hub was on notice of a possible excess judgment in the Brock litigation. Since each of these documents predate April 29, 2007 by several months, Hub contends that A3M's claim is perempted.

A3M, Clarendon and Illinois Union raise two general arguments in opposition to Hub's motion for summary judgment. First, they argue that the peremptive period provided in § 9:5606 is inapplicable, because the responsibility to notify Ace of the Brock litigation fell to Hub employees who were not licensed insurance agents, and thus A3M's claim is not an action against

---

[29] R. Doc. 49-2 at 4-5.

8

an "insurance agent, broker, solicitor, or other similar licensee" under the meaning of the statute.[30] Second, they argue that, even if § 9:5606 applies, the documents allegedly putting Hub on notice of a possible excess claim do not provide the proper start date for the peremptive period.[31] Clarendon, in particular, argues that the peremptive period runs from the latest date on which Hub could have avoided the harm to A3M by notifying Ace of the Brock litigation, not the date on which Hub was put on notice of a possible excess claim.[32] The Court concludes that the latter contention is correct and finds it dispositive of this matter. Accordingly, the Court need not, and does not, reach the argument that § 9:5606 is inapplicable to Hub's alleged conduct.

"According to [§ 9:5606], the three-year peremptive period commences on the date of the alleged act, omission, or neglect." *State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l Union Fire Ins. Co. of La.*, 984 So. 2d 91, 94 (La. Ct. App. 2008). "[I]n order to calculate the three year peremptive period, we must determine the date on which the alleged act, omission or neglect . . . took place." *Graham v. Conque*, 626 So. 2d 870, 873 (La. Ct. App. 1993). "What constitutes the triggering act or

---

[30] R. Doc. 60 at 3-6; R. Doc. 61 at 1-2; R. Doc. 62 at 3-4.

[31] R. Doc. 60 at 6-9; R. Doc. 61 at 3-4; R. Doc. 62 at 4-5.

[32] R. Doc. 60 at 6-7.

omission will differ according to the individual facts." *Oddo v. Am. Heritage Life Ins. Co.*, No. 13-6141, 2013 WL 6797112, at *4 n.1 (E.D. La. Dec. 23, 2013).

Here, A3M alleges that Hub failed to notify Ace timely of the Brock litigation. It is not evident on what date this alleged omission took place for purposes of running the peremptive period, since it essentially recurred every day over an extended period of time. In addressing this question, the Court finds the case of *Graham v. Conque* instructive. 626 So. 2d 870.

In *Graham*, the plaintiff widow sued her former attorney for failure timely to join certain parties in a wrongful death suit arising out of her husband's accidental death. *Id.* at 873. The Louisiana Court of Appeal applied the peremption statute applicable to legal malpractice claims. *Id.* at 872 (citing La. R.S. 9:5605). Like § 9:5606, that statute provides for a three-year peremptive period to run "from the date of the alleged act, omission, or neglect." *Id.* (quoting La. R.S. 9:5605). The Court of Appeal found that the "latest date on which [the relevant parties] could have timely been made defendants in Graham's wrongful death suit was September 23, 1986 (one year from the date of the accident)." *Id.* at 873. Accordingly, it held that "the three year peremptive period ran from September 23, 1986, *the last possible date of omission*, through September 23, 1989." *Id.* (emphasis added).

10

Like *Graham*, this case involves an omission or failure to act on a timely basis: A3M sues Hub for failure timely to notify Ace of the Brock litigation. The harm A3M alleges is Ace's denial of coverage.[33] The Court cannot determine, on the present record, the last possible date on which Hub could have timely notified Ace of the Brock litigation such that "the harm could have been avoided." *Lifemark Hospitals, Inc. v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, No. 94-1258, 1997 WL 33473806, at *4 (E.D. La. Nov. 13, 1997) (citing *Graham*, 626 So. 2d at 873). The Court concludes, in accordance with *Graham*, that this unknown "last possible date of omission" is the date on which the three-year peremptive period began to run, since it is Hub's omission to notify Ace by this date that actually caused the alleged harm. *See id.; see also Johnson v. Whitmore*, No. 02-1844, 2003 WL 22715645, at *2 (E.D. La. Nov. 14, 2003); *cf. Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992) ("[A] right of action in tort comes into being only when the plaintiff's right to be free of illegal damage has been violated.").

Because Hub bears the burden of proof on the question of peremption, *see Rando*, 16 So. 3d at 1082, its failure to establish as a matter of fact "the last date on which the harm could have been avoided," *Lifemark Hospitals,* 1997 WL 33473806, at *4, is fatal to its motion for summary judgment. The flaw in

---

[33] R. Doc. 1-6 at 12.

Hub's argument that the relevant date necessarily fell before April 29, 2007 is further demonstrated by Louisiana law on late notice. In order to establish a late notice defense under Louisiana law, an insurer must show actual prejudice. *American Safety & Risk Servs., Inc. v. Legion Indem. Co.*, 153 F. Supp. 2d 869, 878 (E.D. La. 2001). Even "notice first received after trial and after the judgment has become executory" is not "untimely as a matter of law." *Fakouri v. Ins. Co. of N. Am.*, 378 So. 2d 1083, 1086 (La. Ct. App. 1979) ("[T]he rule has developed in this state that an insurer must prove actual prejudice in order to be able to deny a claim on the basis of not receiving notification as stipulated in the policy contract."). The Brock litigation did not go to trial until January 2009, and A3M did not refuse the Brocks' $1,000,000 settlement offer until March 20, 2009.[34] The Court finds it plausible that Ace would not have been prejudiced if it had received notification of the Brock litigation sometime in 2007, 2008 or even early 2009, and thus it plausibly would not have denied coverage during that window. Thus, the Court cannot conclude that the last possible date on which harm could have been avoided necessarily fell before April 29, 2007.

Hub argues that the peremptive period commenced, at the latest, on October 20, 2006, the last of the three dates on which it allegedly received written notice of a possible excess

---

[34] R. Doc. 49-3 at 7; R. Doc. 60 at 3.

12

judgment. It argues that to run the peremptive period from a later date would violate the rule that continuing torts may not suspend peremptive periods.[35] *See Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So. 2d 377, 382 (La. Ct. App. 2003) ("[T]he principle of continuing torts is a suspensive principle, ineffective against the effects of peremption.").

The Court finds that this case does not involve a continuing tort. Under the Louisiana continuing torts doctrine, "[w]hen the tortious conduct *and resulting damages* continue, prescription does not begin until the conduct causing the damage is abated." *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531, 533 (La. 1982) (emphasis added). The Louisiana Supreme Court has described a continuing tort, outside the context of continuing trespass, as one comprising "*cumulative*, continuous acts" in circumstances where "it would be most difficult to pin-point the specific moment in time when such continuous conduct became sufficiently outrageous, and such *continuing damages* rose to the level of severity, to become actionable and thus to commence the running of prescription." *In re Medical Review Panel for Claim of Moses*, 788 So. 2d 1173, 1184 (La. 2001) (emphases added) (quoting *Bustamento v. Tucker*, 607 So. 2d 532, 538 (La. 1992)). The Louisiana Supreme Court has identified continuing torts when "the plaintiff was subject to continuous exposure to silica dust in

---

[35] R. Doc. 67 at 5.

the workplace for over a decade," and when the plaintiff was subject to "an entire course of harassment." *Id.* at 1183 (citing *Wilson v. Hartzman*, 373 So. 2d 204 (La. Ct. App. 1979); *Bustamento*, 607 So. 2d 532).

Here, by contrast, Hub's failure to notify Ace of the Brock litigation did not cause continuing, accumulating damages. Rather, it caused damages, if any, only on "the last date on which the harm could have been avoided." *Lifemark Hospitals,* 1997 WL 33473806, at *4. Thus, to the extent that Hub had a duty to notify Ace timely of the Brock litigation, its alleged damage-causing omission did not take place on the date or dates on which it received notice of a possible excess judgment but rather on "the last possible date of omission." *Graham*, 626 So. 2d at 873. For the reasons stated above, Hub has failed to establish that this date fell before April 29, 2007. Accordingly, it has failed to establish that A3M's claim is perempted.

Finally, the Court is not persuaded by Hub's citation to *State ex rel. Division of Administration, Office of Risk Management v. National Union Fire Insurance Company of Louisiana*, 984 So. 2d 91 (La. Ct. App. 2008) ("*Office of Risk Management*"). Although the factual circumstances of that case are similar to those present here, the Louisiana Court of Appeal did not there have occasion to address the specific question raised in this matter. In *Office of Risk Management*, the State of Louisiana sued

14

its insurance broker for failure to notify its excess liability carrier of pending litigation. *Id.* at 92-93. The State based its claim on two letters it sent to the broker regarding the litigation. *Id.* at 93. The first letter was sent more than three years before the State sued the broker, but the second letter was sent less than three years before the State sued the broker, *i.e.*, within the three-year peremptive period. *Id.* at 94-95. The State argued that its claim was not perempted, because the broker's failure to take action upon receipt of the second letter constituted a separate and distinct tort from which a new peremptive period ran. *Id.* The Court of Appeal held that the broker's failure to take action upon receipt of the second letter constituted a separate and distinct act, and that it might have constituted a separate and distinct tort, as the State argued, if it gave rise to "immediately apparent damages." *Id*. at 96-97.

Hub cites to *Office of Risk Management*, because the case suggests that, in the context of a claim against a broker for failure to notify an excess insurer, the peremptive period might run from the dates on which the broker received notice of the possible excess claim. The case is distinguishable, however, because the dispute between the parties in *Office of Risk Management* was whether the peremptive period ran from the date of the first letter notifying the broker of the litigation or the date of the second letter notifying the broker of the litigation.

*Id.* at 94-95. The State, apparently, did not argue that the peremptive period might run from the last date on which the harm could have been avoided, as Clarendon does here.

The Court finds that *Graham v. Conque*, discussed *supra*, is more closely analogous to the present case. As in *Graham*, the Court finds that the date of the alleged omission is the last date on which harm could have been avoided. *See Graham*, 626 So. 2d at 873. Because Hub has failed to establish that this date fell before April 29, 2007, it has not satisfied its burden on summary judgment.

## IV.  Conclusion

For the foregoing reasons, the Court DENIES Hub's motion for summary judgment.

New Orleans, Louisiana, this __24th__ day of April, 2014.

_____
**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**